Argued April 14, affirmed April 28, 1954
CANADAY ET UX. *v.* DAVIS ET UX.
269 P. 2d 844

*William K. Shepherd,* of Portland, argued the cause and filed a brief for appellants.

*George H. Layman,* of Newberg, argued the cause and filed a brief for respondents.

Before LATOURETTE, Chief Justice, and LUSK, TOOZE and PERRY, Justices.

## PER CURRIAM.

This is a suit for reformation of a warranty deed and for injunctive relief, brought by A. L. Canaday and Cammie Canaday, his wife, as plaintiffs, against E. E. Davis and Thelma Davis, his wife, as defendants. Decree was entered in favor of plaintiffs as prayed for in their complaint; defendants appeal.

The warranty deed involved in this litigation was one duly executed and acknowledged by plaintiffs, as grantors, on April 9, 1952 (recorded April 11, 1952), with defendants as husband and wife, named as grantees, and by the terms of which Tracts "A" and 15 in the Earlwood subdivision, section 36, township 3 south of range 2 west of the Willamette meridian, in Yamhill County, Oregon, containing 12.04 acres of land, more or less, were conveyed to defendants.

On Tract 15, containing approximately 10 acres of land, there was a stand of merchantable timber. The reasonable market value of this standing timber was $2,500. On Tract "A", containing approximately two acres, a portion of which was cleared land, there was a small dwelling house. As the agreed purchase price of the two tracts of land, defendants paid plaintiffs the sum of $1,800.

Plaintiff A. L. Canaday, a real estate broker, prepared the deed executed and delivered to defendants, but, as plaintiffs contend, through mutual mistake, there was omitted therefrom the following exception:

"Excepting therefrom all timber on said Tract 15, which timber has previously been sold to Abbey Mill & Lumber Company of Newberg, Oregon, with right of ingress and egress to remove the same."

It was to reform the deed so that it would contain such an exception from the warranty clause thereof that this suit was instituted.

Upon some of the vital issues in the case, there was a decided conflict in the testimony. Only one witness who was wholly disinterested was called to testify; he was B. J. Madzier, a witness for plaintiffs. Madzier, as the representative of Abbey Mill & Lumber Company, conducted the negotiations with plaintiff for the

sale of the timber by plaintiffs to that company. According to Madzier (and also plaintiff A. L. Canaday), these negotiations commenced in February, 1952, and an agreement was reached about the 1st of March, 1952. On March 6, 1952, Abbey Mill & Lumber Company paid plaintiffs the sum of $100 on the agreed purchase price of $2,500 for the timber. Another payment of $1,150 was made by the Lumber Company on March 22, 1952, and the final payment of $1,250, about April 11, 1952.

Plaintiffs never met defendants until March 10, 1952. On that day, at defendants' request, the plaintiff A. L. Canaday pointed out to defendants several different tracts of land that were for sale, none of which was satisfactory to defendants. He then showed them the two tracts of land owned by him and his wife, and offered to sell them for $2,500. On March 11, 1952, he accepted the offer of defendants to pay the sum of $1,800 therefor. Canaday then prepared an earnest money receipt, with an original and three copies, and defendants paid $500 in cash on the purchase price. One copy of the receipt was delivered to defendants. All parties agree that the earnest money receipt as finally prepared contained the following exception: "Logging Operation of Abby Lbr. Co. of Newberg, Ore. to be finished in 12 months." The original and two duplicate copies of the earnest money receipt that were retained by plaintiffs, and as introduced in evidence, contained additional data respecting the exception. Before the words "Logging Operation" appears the following endorsement: "Timber Sold to Abby Mill & a", and after the words and figures "to be finished in 12 months", the following: "from above date".

Plaintiffs contend that all this data was written into the earnest money receipt on March 11, 1952, while

all parties were present, and through inadvertence defendants' copy of the receipt was not made to include the additional matter. Defendants dispute this contention of plaintiffs.

The trial was held before a circuit judge who has had more than 27 years of distinguished service upon the trial bench. It is manifest that his long experience is invaluable in weighing conflicts in testimony and in determining wherein lies the truth. Although we try this matter de novo upon the record before us and are in no sense bound by the findings of the trial court, nevertheless, such findings, in a case where the evidence is conflicting, are entitled to great weight. In his memorandum opinion filed in this cause, the trial judge said:

"The sole question of fact for determination in this case is concerning the agreement between the parties—that is whether or not the plaintiffs reserved the timber in question. After a careful consideration of the record as a whole I am convinced that it was the understanding of the parties at the time of the sale that the plaintiffs were reserving the timber.

"The earnest money receipt as conceded by the defendants contained these words—'Logging Operation of Abby Lbr. Co. of Newberg, Ore. to be finished in 12 months.' This indicates that the defendants must have known and understood that a logging operation was contemplated and could have affected nothing but the timber in question. There is a dispute as to whether the other writing was placed on the receipt with the knowledge and consent of the defendants. However, it seems more or less immaterial as there cannot be much question concerning the meaning of that part which was admittedly on the instrument.

"It appeals to me that the probabilities are with the plaintiffs. It is hardly conceivable that the plain-

tiffs would sell twelve acres of land with at least some improvements on the same and timber valued at $2500 for $1800. I cannot believe that the plaintiff endeavored to sell something which he had already sold and do not believe that the plaintiff was guilty of fraudulent misrepresentation in this regard.

"The testimony of Mr. Madzier is entitled to considerable weight. He is a wholly disinterested witness and appeared to be truthful and honest. The contradictions and explanations regarding his testimony as made by the defendants were not convincing or satisfactory. It is my opinion that the defendants told him just what he said they did and at the time he visited them they recognized the fact that the Abbey Mill was the owner of the timber and that they had no interest in the same.

"There is a sharp and direct conflict in the testimony. I carefully listened to the testimony and observed the demeanor of the witnesses and after doing so was more impressed with the plaintiff's version of the affair in question than I was with the defendants. The defendants made many denials and explanations that were not all convincing. It is also difficult for me to believe that they never received the policy of title insurance nor gave it any more attention than they endeavor to make the court believe. My conclusion is that it was the understanding of the parties that the timber was being reserved by the plaintiffs. To me the evidence is clear, satisfactory and convincing.

"It is said in the case of Sayre vs. Moir, 68 Oregon, page 387—'In order to reform a deed on the ground of mistake, it should be shown that the mistake did not arise from the gross negligence of the plaintiff, and that the circumstances are such that an unfair advantage has been gained by the defendant through the mistake, and that it is against good conscience to allow such mistake to stand.'

"I do not feel that the plaintiff was guilty of gross negligence. It is just another case of a not too experienced real estate broker endeavoring to

do something that he was not qualified to do—preparing and drawing legal documents. This seems to be the general custom and often results in litigation. Of course it is unwise but I do not feel that one can be held guilty of gross negligence because of it.

"An unfair advantage would be gained by the defendant if the deed is not reformed and I feel that it is against good conscience to let it stand.

"The deed will be reformed as prayed for in the complaint and the defendants restrained from selling or disposing of said timber.

"At the conclusion of the trial counsel for the plaintiff suggested that under that portion of the prayer asking for such other and further relief as the court may deem just and equitable that the time for the removal of the timber be extended. I feel that this is a reasonable request due to the fact that the acts of the defendants have made it impossible for the plaintiffs or those to whom the timber was sold to remove the same. The time for the removal of the same will be extended to September 1st, 1953."

We are satisfied that the trial court arrived at the correct solution of the problem. There is no dispute between the parties as to the applicable law, and it is unnecessary, therefore, to discuss the legal phases of the question.

Because of the delay and uncertainty caused by this litigation, the trial court properly extended the time for the removal of the timber to September 1, 1953. If, upon this final determination of the matter, the timber has not yet been removed, then the owners thereof should be allowed a reasonable time in the future for its removal, the time to be fixed by the trial court.

The decree is affirmed. Neither party is to recover costs.